***No. 06-351 T***
***(Judge Emily C. Hewitt)***

***IN THE UNITED STATES COURT OF FEDERAL CLAIMS***

GISELE C. FISHER,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

APPENDIX TO UNITED STATES' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

RICHARD T. MORRISON
Acting Assistant Attorney General

DAVID GUSTAFSON
G. ROBSON STEWART
ROBERT J. HIGGINS

Attorneys
Justice Department (Tax)
Court of Federal Claims Section
P.O. Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-6506

**Page**

# TABLE OF CONTENTS

Pub. L No. 99-514, October 22, 1986, § 631, 100 Stat 2085 . . . . . . . . . . A1

Internal Revenue Code of 1986 (26 U.S.C.):

§ 541 . . . . . . . . . . A2
§ 2501 . . . . . . . . . . A3
§ 2512 . . . . . . . . . . A5
§7491 . . . . . . . . . . A5

Treasury Regulations (26 C.F.R.):

1994 I.R.B. 4, 199-1 C.B. XIX, 1999 WL 33541682 (IRS ACQ) . . . . . . . . . . A6

Rev. Rul 59-60, 1959-1 C.B. 237, 1959 Wl 12594 . . . . . . . . . . A7

Treas. Reg. § 25-2512-1 . . . . . . . . . . A15

## Appendix

**Pub. Law No. 99-514, October 22, 1986, 100 Stat 2085**

SEC. 631. RECOGNITION OF GAIN AND LOSS ON DISTRIBUTIONS OF PROPERTY IN LIQUIDATION.

(a) GENERAL RULE. -- Subpart B of part II of subchapter C (relating to effects on corporation) is amended by striking out sections 336 and 337 and inserting in lieu thereof the following:

1. "SEC. 336. GAIN OR LOSS RECOGNIZED ON PROPERTY DISTRIBUTED IN COMPLETE LIQUIDATION.

"(a) GENERAL RULE. -- Except as otherwise provided in this section or section 337, gain or loss shall be recognized to a liquidating corporation on the distribution of property in complete liquidation as if such property were sold to the distributee at its fair market value.

"(b) TREATMENT OF LIABILITIES IN EXCESS OF BASIS. -- If any property distributed in the liquidation is subject to a liability or the shareholder assumes a liability of the liquidating corporation in connection with the distribution, for purposes of subsection (a) and section 337, the fair market value of such property shall be treated as not less than the amount of such liability.

"(c) EXCEPTION FOR CERTAIN LIQUIDATIONS TO WHICH PART III APPLIES. -- This section shall not apply with respect to any distribution of property to the extent there is nonrecognition of gain or loss with respect to such property to the recipient under part III.

"(d) LIMITATIONS ON RECOGNITION OF LOSS. --

"(1) NO LOSS RECOGNIZED IN CERTAIN DISTRIBUTIONS TO RELATED PERSONS. --

"(A) IN GENERAL. -- No loss shall be recognized to a liquidating corporation on the distribution of any property to a related person (within the meaning of section 267) if --

"(i) such distribution is not pro rata, or

"(ii) such property is disqualified property.

"(B) DISQUALIFIED PROPERTY. -- For purposes of subparagraph (A), the term 'disqualified property' means any property which is acquired by the liquidating corporation in a transaction to which section 351 applied, or as a contribution to capital, during the 5-year period ending on the date of the distribution. Such term includes any property if the adjusted basis of such property is determined (in whole or in part) by reference to the adjusted basis of property described in the preceding sentence.

"(2) SPECIAL RULE FOR CERTAIN PROPERTY ACQUIRED IN CERTAIN CARRYOVER BASIS TRANSACTIONS. --

"(A) IN GENERAL. -- For purposes of determining the amount of loss recognized by any liquidating corporation on any sale, exchange, or distribution of property described in subparagraph (B), the adjusted basis of such property shall be reduced (but not below zero) by

the excess (if any) of --
"(i) the adjusted basis of such property immediately after its acquisition by such corporation, over
"(ii) the fair market value of such property as of such time.
"(B) DESCRIPTION OF PROPERTY. --
"(i) IN GENERAL. -- For purposes of subparagraph (A), property is described in this subparagraph if --
"(I) such property is acquired by the liquidating corporation in a transaction to which section 351 applied or as a contribution to capital, and
"(II) the acquisition of such property by the liquidating corporation was part of a plan a principal purpose of which was to recognize loss by the liquidating corporation with respect to such property in connection with the liquidation.
Other property shall be treated as so described if the adjusted basis of such other property is determined (in whole or in part) by reference to the adjusted basis of property described in the preceding sentence.
"(ii) CERTAIN ACQUISITIONS TREATED AS PART OF PLAN. -- For purposes of clause (i), any property described in clause (i)(I) acquired by the liquidating corporation during the 2-year period ending on the date of the adoption of the plan of complete liquidation shall, except as provided in regulations, be treated as part of a plan described in clause (i)(II).
"(C) RECAPTURE IN LIEU OF DISALLOWANCE. -- The Secretary may prescribe regulations under which, in lieu of disallowing a loss under subparagraph (A) for a prior taxable year, the gross income of the liquidating corporation for the taxable year in which the plan of complete liquidation is adopted shall be increased by the amount of the disallowed loss.
"(3) SPECIAL RULE IN CASE OF LIQUIDATION TO WHICH SECTION 332 APPLIES. -- In the case of any liquidation to which section 332 applies, no loss shall be recognized to the liquidating corporation on any distribution in such liquidation.
"(e) CERTAIN STOCK SALES AND DISTRIBUTIONS MAY BE TREATED AS ASSET TRANSFERS. -- Under regulations prescribed by the Secretary, if --
"(1) a corporation owns stock in another corporation meeting the requirements of section 1504(a)(2), and
"(2) such corporation sells, exchanges, or distributes all of such stock,
such corporation may elect to treat such sale, exchange, or distribution as a disposition of all of the assets of such other corporation, and no gain or loss shall be recognized on the sale, exchange, or distribution of such stock.

***

Internal Revenue Service Codes of 1986 (26 U.S.C.):

**§ 541. Imposition of personal holding company tax**

In addition to other taxes imposed by this chapter, there is hereby imposed for each taxable year on the undistributed personal holding company income (as defined in section 545) of every personal holding company (as defined in section 542) a personal holding company tax equal to 15 percent of the undistributed personal holding company income.

**§ 2501. Imposition of tax**

**(a) Taxable transfers.--**

**(1) General rule.**--A tax, computed as provided in section 2502, is hereby imposed for each calendar year on the transfer of property by gift during such calendar year by any individual, resident or nonresident.

**(2) Transfers of intangible property.**--Except as provided in paragraph (3), paragraph (1) shall not apply to the transfer of intangible property by a nonresident not a citizen of the United States.

**(3) Exception.--**

**(A) Certain individuals.**--Paragraph (2) shall not apply in the case of a donor to whom section 877(b) applies for the taxable year which includes the date of the transfer.

**(B) Credit for foreign gift taxes.**--The tax imposed by this section solely by reason of this paragraph shall be credited with the amount of any gift tax actually paid to any foreign country in respect of any gift which is taxable under this section solely by reason of this paragraph.

**(4) Transfers to political organizations.**--Paragraph (1) shall not apply to the transfer of money or other property to a political organization (within the meaning of section 527(e)(1)) for the use of such organization.

**(5) Transfers of certain stock.--**

**(A) In general.**--In the case of a transfer of stock in a foreign corporation described in subparagraph (B) by a donor to whom section 877(b) applies for the taxable year which includes the date of the transfer--

**(i)** section 2511(a) shall be applied without regard to whether such stock is situated within the United States, and

**(ii)** the value of such stock for purposes of this chapter shall be its U.S.- asset value determined under subparagraph (C).

**(B) Foreign corporation described.**--A foreign corporation is described in this subparagraph with respect to a donor if--

**(i)** the donor owned (within the meaning of section 958(a)) at the time of such transfer 10 percent or more of the total combined voting power of all classes of stock entitled to vote of the foreign corporation, and

**(ii)** such donor owned (within the meaning of section 958(a)), or is considered to have owned (by applying the ownership rules of section 958(b)), at the time of such transfer, more than 50 percent of--

**(I)** the total combined voting power of all classes of stock entitled to vote of such corporation, or

**(II)** the total value of the stock of such corporation.

**(C) U.S.-asset value.**--For purposes of subparagraph (A), the U.S.-asset value of stock shall be the amount which bears the same ratio to the fair market value of such stock at the time of transfer as--

**(i)** the fair market value (at such time) of the assets owned by such foreign corporation and situated in the United States, bears to

**(ii)** the total fair market value (at such time) of all assets owned by such foreign corporation.

**(b) Certain residents of possessions considered citizens of the United States.**--A donor who is a citizen of the United States and a resident of a possession thereof shall, for purposes of the tax imposed by this chapter, be considered a "citizen" of the United States within the meaning of that term wherever used in this title unless he acquired his United States citizenship solely by reason of (1) his being a citizen of such possession of the United States, or (2) his birth or residence within such possession of the United States.

**(c) Certain residents of possessions considered nonresidents not citizens of the United States.**--A donor who is a citizen of the United States and a resident of a possession thereof shall, for purposes of the tax imposed by this chapter, be considered a "nonresident not a citizen of the United States" within the meaning of that term wherever used in this title, but only if such donor acquired his United States citizenship solely by reason of (1) his being a citizen of such possession of the United States, or (2) his birth or residence within such possession of the United States.

**(d) Cross references.--**

(1) For increase in basis of property acquired by gift for gift tax paid, see section 1015(d).

(2) For exclusion of transfers of property outside the United States by a nonresident who is not a citizen of the United States, see section 2511(a).

**§ 2512. Valuation of gifts**

**(a)** If the gift is made in property, the value thereof at the date of the gift shall be considered the amount of the gift.

**(b)** Where property is transferred for less than an adequate and full consideration in money or money's worth, then the amount by which the value of the property exceeded the value of the consideration shall be deemed a gift, and shall be included in computing the amount of gifts made during the calendar year.

**(c) Cross reference.**--

For individual's right to be furnished on request a statement regarding any valuation made by the Secretary of a gift by that individual, see section 7517.

**§ 7491.** Burden of proof

**(a) Burden shifts where taxpayer produces credible evidence.**--

**(1) General rule.**--If, in any court proceeding, a taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the liability of the taxpayer for any tax imposed by subtitle A or B, the Secretary shall have the burden of proof with respect to such issue.

**(2) Limitations.**--Paragraph (1) shall apply with respect to an issue only if--

**(A)** the taxpayer has complied with the requirements under this title to substantiate any item;

**(B)** the taxpayer has maintained all records required under this title and has cooperated with reasonable requests by the Secretary for witnesses, information, documents, meetings, and interviews; and

**(C)** in the case of a partnership, corporation, or trust, the taxpayer is described in section 7430(c)(4)(A)(ii).

Subparagraph (C) shall not apply to any qualified revocable trust (as defined in section 645(b)(1)) with respect to liability for tax for any taxable year ending after the date of the decedent's death and before the applicable date (as defined in section 645(b)(2)).

**(3) Coordination.**--Paragraph (1) shall not apply to any issue if any other provision of this title provides for a specific burden of proof with respect to such issue.

**(b) Use of statistical information on unrelated taxpayers.**--In the case of an individual taxpayer, the Secretary shall have the burden of proof in any court proceeding with respect to any item of

income which was reconstructed by the Secretary solely through the use of statistical information on unrelated taxpayers.

**(c) Penalties.**--Notwithstanding any other provision of this title, the Secretary shall have the burden of production in any court proceeding with respect to the liability of any individual for any penalty, addition to tax, or additional amount imposed by this title.

***

Treasury Regulations (26 C.F.R.)

1999-4 I.R.B. 4, 1999-1 C.B. XIX, 1999 WL 33541682 (IRS ACQ)

The Commissioner ACQUIESCES in the following decisions:
**Eisenberg v. Commissioner,**[FN1] 155 F.3d 50 (2d Cir. 1998)

FN1. Acquiescence relating to whether a discount for potential capital gains tax liabilities may be applied in valuing closely-held stock.

NOTE: To see a complete list of the Acquiescences/NonAcquiescences associated with this Bulletin access Find a Document and enter the Bulletin citation.
It is the policy of the Internal Revenue Service to announce at an early date whether it will follow the holdings in certain cases. An Action on Decision is the document making such an announcement. An Action on Decision will be issued at the discretion of the Service only on un-appealed issues decided adverse to the government. Generally, an Action on Decision is issued where its guidance would be helpful to Service personnel working with the same or similar issues. Unlike a Treasury Regulation or a Revenue Ruling, an Action on Decision is not an affirmative statement of Service position. It is not intended to serve as public guidance and may not be cited as precedent.

Actions on Decisions shall be relied upon within the Service only as conclusions applying the law to the facts in the particular case at the time the Action on Decision was issued. Caution should be exercised in extending the recommendation of the Action on Decision to similar cases where the facts are different. Moreover, the recommendation in the Action on Decision may be superseded by new legislation, regulations, rulings, cases, or Actions on Decisions.

Prior to 1991, the Service published acquiescence or nonacquiescence only in certain regular Tax Court opinions. The Service has expanded its acquiescence program to include other civil tax cases where guidance is determined to be helpful. Accordingly, the Service now may acquiesce or nonacquiesce in the holdings of memerandum Tax Court opinions, as well as those of the United States District Courts, Claims Court, and Circuit Courts of Appeal. Regardless of the court deciding the case, the recommendation of any Action on Decision will be published in the Internal Revenue Bulletin.

The recommendation in every Action on Decision will be summarized as acquiescence, acquiescence in result only, or nonacquiescence. Both “acquiescence” and “acquiescence in result only” mean that the Service accepts the holding of the court in a case and that the Service will follow it in disposing of cases with the same controlling facts. However, “acquiescence” indicates neither approval nor disapproval of the reasons assigned by the court for its conclusions; whereas, “acquiescence in result only” indicates disagreement or concern with some or all of those reasons. Nonacquiescence signifies that, although no further review was sought, the Service does not agree with the holding of the court and, generally, will not follow the decision in disposing of cases involving other taxpayers. In reference to an opinion of a circuit court of appeals, a nonacquiescence indicates that the Service will not follow the holding on a nationwide basis. However, the Service will recognize the precedential impact of the opinion on cases arising within the venue of the deciding circuit.

The announcements published in the weekly Internal Revenue Bulletins are consolidated semiannually and annually. The semiannual consolidation appears in the first Bulletin for July and in the Cumulative Bulletin for the first half of the year, and the annual consolidation appears in the first Bulletin for the following January and in the Cumulative Bulletin for the last half of the year.

**Rev. Rul. 59-60, 1959-1 C.B. 237, 1959 WL 12594 (IRS RRU)**

SECTION 2031.-DEFINITION OF GROSS ESTATE, 26 CFR 20.2031-2: Valuation of stocks and bonds

In valuing the stock of closely held corporations, or the stock of corporations where market quotations are not available, all other available financial data, as well as all relevant factors affecting the fair market value must be considered for estate tax and gift tax purposes. No general formula may be given that is applicable to the many different valuation situations arising in the valuation of such stock. However, the general approach, methods, and factors which must be considered in valuing such securities are outlined.

Revenue Ruling 54-77, C.B. 1954-1, 187, superseded.

SECTION 1. PURPOSE.

The purpose of this Revenue Ruling is to outline and review in general the approach, methods and factors to be considered in valuing shares of the capital stock of closely held corporations for estate tax and gift tax purposes. The methods discussed herein will apply likewise to the valuation of corporate stocks on which market quotations are either unavailable or are of such

scarcity that they do not reflect the fair market value.

SEC. 2. BACKGROUND AND DEFINITIONS.

.01 All valuations must be made in accordance with the applicable provisions of the Internal Revenue Code of 1954 and the Federal Estate Tax and Gift Tax Regulations. Sections 2031(a), 2032 and 2512(a) of the 1954 Code (sections 811 and 1005 of the 1939 Code) require that the property to be included in the gross estate, or made the subject of a gift, shall be taxed on the basis of the value of the property at the time of death of the decedent, the alternate date if so elected, or the date of gift.

.02 Section 20.2031-1(b) of the Estate Tax Regulations (section 81.10 of the Estate Tax Regulations 105) and section 25.2512-1 of the Gift Tax Regulations (section 86.19 of Gift Tax Regulations 108) define fair market value, in effect, as the price at which the property would change hands between a willing buyer and a willing seller when the former is not under any compulsion to buy and the latter is not under any compulsion to sell, both parties having reasonable knowledge of relevant facts. Court decisions frequently state in addition that the hypothetical buyer and seller are assumed to be able, as well as willing, to trade and to be well informed about the property and concerning the market for such property.

.03 Closely held corporations are those corporations the shares of which are owned by a relatively limited number of stockholders. Often the entire stock issue is held by one family. The result of this situation is that little, if any, trading is the shares takes place. There is, therefore, no established market for the stock and such sales as occur at irregular intervals seldom reflect all of the elements of a representative transaction as defined by the term 'fair market value.'

SEC. 3. APPROACH TO VALUATION.

.01 A determination of fair market value, being a question of fact, will depend upon the circumstances in each case. No formula can be devised that will be generally applicable to the multitude of different valuation issues arising in estate and gift tax cases. Often, an appraiser will find wide differences of opinion as to the fair market value of a particular stock. In resolving such differences, he should maintain a reasonable attitude in recognition of the fact that valuation is not an exact science. A sound valuation will be based upon all the relevant facts, but the elements of common sense, informed judgment and reasonableness must enter into the process of weighing those facts and determining their aggregate significance.

.02 The fair market value of specific shares of stock will vary as general economic conditions change from 'normal' to 'boom' or 'depression,' that is, according to the degree of optimism or pessimism with which the investing public regards the future at the required date of appraisal.

Uncertainty as to the stability or continuity of the future income from a property decreases its value by increasing the risk of loss of earnings and value in the future. The value of shares of stock of a company with very uncertain future prospects is highly speculative. The appraiser must exercise his judgment as to the degree of risk attaching to the business of the corporation which issued the stock, but that judgment must be related to all of the other factors affecting value.

.03 Valuation of securities is, in essence, a prophesy as to the future and must be based on facts available at the required date of appraisal. As a generalization, the prices of stocks which are traded in volume in a free and active market by informed persons best reflect the consensus of the investing public as to what the future holds for the corporations and industries represented. When a stock is closely held, is traded infrequently, or is traded in an erratic market, some other measure of value must be used. In many instances, the next best measure may be found in the prices at which the stocks of companies engaged in the same or a similar line of business are selling in a free and open market.

SEC. 4. FACTORS TO CONSIDER.

.01 It is advisable to emphasize that in the valuation of the stock of closely held corporations or the stock of corporations where market quotations are either lacking or too scarce to be recognized, all available financial data, as well as all relevant factors affecting the fair market value, should be considered. The following factors, although not all-inclusive are fundamental and require careful analysis in each case:

(a) The nature of the business and the history of the enterprise from its inception.

(b) The economic outlook in general and the condition and outlook of the specific industry in particular.

(c) The book value of the stock and the financial condition of the business.

(d) The earning capacity of the company.

(e) The dividend-paying capacity.

(f) Whether or not the enterprise has goodwill or other intangible value.

(g) Sales of the stock and the size of the block of stock to be valued.

(h) The market price of stocks of corporations engaged in the same or a similar line of business having their stocks actively traded in a free and open market, either on an exchange or over-the-counter.

.02 The following is a brief discussion of each of the foregoing factors:

(a) The history of a corporate enterprise will show its past stability or instability, its growth or lack of growth, the diversity or lack of diversity of its operations, and other facts needed to form an opinion of the degree of risk involved in the business. For an enterprise which changed its form of organization but carried on the same or closely similar operations of its predecessor, the history of the former enterprise should be considered. The detail to be considered should increase with approach to the required date of appraisal, since recent events are of greatest help in predicting the future; but a study of gross and net income, and of dividends covering a long prior period, is highly desirable. The history to be studied should include, but need not be limited to, the nature of the business, its products or services, its operating and investment assets, capital structure, plant facilities, sales records and management, all of which should be considered as of the date of the appraisal, with due regard for recent significant changes. Events of the past that are unlikely to recur in the future should be discounted, since value has a close relation to future expectancy.

(b) A sound appraisal of a closely held stock must consider current and prospective economic conditions as of the date of appraisal, both in the national economy and in the industry or industries with which the corporation is allied. It is important to know that the company is more or less successful than its competitors in the same industry, or that it is maintaining a stable position with respect to competitors. Equal or even greater significance may attach to the ability of the industry with which the company is allied to compete with other industries. Prospective competition which has not been a factor in prior years should be given careful attention. For example, high profits due to the novelty of its product and the lack of competition often lead to increasing competition. The public's appraisal of the future prospects of competitive industries or of competitors within an industry may be indicated by price trends in the markets for commodities and for securities. The loss of the manager of a so-called 'one-man' business may have a depressing effect upon the value of the stock of such business, particularly if there is a lack of trained personnel capable of succeeding to the management of the enterprise. In valuing the stock of this type of business, therefore, the effect of the loss of the manager on the future expectancy of the business, and the absence of management-succession potentialities are pertinent factors to be taken into consideration. On the other hand, there may be factors which offset, in whole or in part, the loss of the manager's services. For instance, the nature of the business and of its assets may be such that they will not be impaired by the loss of the manager. Furthermore, the loss may be adequately covered by life insurance, or competent management might be employed on the basis of the consideration paid for the former manager's services. These, or other offsetting factors, if found to exist, should be carefully weighed against the loss of the manager's services in valuing the stock of the enterprise.

(c) Balance sheets should be obtained, preferably in the form of comparative annual statements for two or more years immediately preceding the date of appraisal, together with a balance sheet at the end of the month preceding that date, if corporate accounting will permit. Any balance sheet descriptions that are not self-explanatory, and balance sheet items comprehending diverse assets or liabilities, should be clarified in essential detail by supporting supplemental schedules. These statements usually will disclose to the appraiser

(1) liquid position (ratio of current assets to current liabilities); (2) gross and net book value of principal classes of fixed assets; (3) working capital; (4) long-term indebtedness; (5) capital structure; and (6) net worth. Consideration also should be given to any assets not essential to the operation of the business, such as investments in securities, real estate, etc. In general, such nonoperating assets will command a lower rate of return than do the operating assets, although in exceptional cases the reverse may be true. In computing the book value per share of stock, assets of the investment type should be revalued on the basis of their market price and the book value adjusted accordingly. Comparison of the company's balance sheets over several years may reveal, among other facts, such developments as the acquisition of additional production facilities or subsidiary companies, improvement in financial position, and details as to recapitalizations and other changes in the capital structure of the corporation. If the corporation has more than one class of stock outstanding, the charter or certificate of incorporation should be examined to ascertain the explicit rights and privileges of the various stock issues including: (1) voting powers, (2) preference as to dividends, and (3) preference as to assets in the event of liquidation.

(d) Detailed profit-and-loss statements should be obtained and considered for a representative period immediately prior to the required date of appraisal, preferably five or more years. Such statements should show (1) gross income by principal items; (2) principal deductions from gross income including major prior items of operating expenses, interest and other expense on each item of long-term debt, depreciation and depletion if such deductions are made, officers' salaries, in total if they appear to be reasonable or in detail if they seem to be excessive, contributions (whether or not deductible for tax purposes) that the nature of its business and its community position require the corporation to make, and taxes by principal items, including income and excess profits taxes; (3) net income available for dividends; (4) rates and amounts of dividends paid on each class of stock; (5) remaining amount carried to surplus; and (6) adjustments to, and reconciliation with, surplus as stated on the balance sheet. With profit and loss statements of this character available, the appraiser should be able to separate recurrent from nonrecurrent items of income and expense, to distinguish between operating income and investment income, and to ascertain whether or not any line of business in which the company is engaged is operated consistently at a loss and might be abandoned with benefit to the company. The percentage of earnings retained for business expansion should be noted when dividend-paying capacity is considered. Potential future income is a major factor in many valuations of closely-held stocks, and all information concerning past income which will be helpful in predicting the future should be secured. Prior earnings records usually are the most reliable guide as to the future expectancy, but resort to arbitrary five-or-ten-year averages without regard to current trends or future prospects will not produce a realistic valuation. If, for instance, a record of progressively increasing or decreasing net income is found, then greater weight may be accorded the most recent years' profits in estimating earning power. It will be helpful, in judging risk and the extent to which a business is a marginal operator, to consider deductions from income and net income in terms of percentage of sales. Major categories of cost and expense to be so analyzed include the consumption of raw materials and supplies in the case of manufacturers, processors and fabricators; the cost of purchased merchandise in the case of merchants; utility services; insurance; taxes; depletion or depreciation; and interest.

(e) Primary consideration should be given to the dividend-paying capacity of the company rather than to dividends actually paid in the past. Recognition must be given to the necessity of retaining a reasonable portion of profits in a company to meet competition. Dividend-paying capacity is a factor that must be considered in an appraisal, but dividends actually paid in the past may not have any relation to dividend-paying capacity. Specifically, the dividends paid by a closely held family company may be measured by the income needs of the stockholders or by their desire to avoid taxes on dividend receipts, instead of by the ability of the company to pay dividends. Where an actual or effective controlling interest in a corporation is to be valued, the dividend factor is not a material element, since the payment of such dividends is discretionary with the controlling stockholders. The individual or group in control can substitute salaries and bonuses for dividends, thus reducing net income and understating the dividend-paying capacity of the company. It follows, therefore, that dividends are less reliable criteria of fair market value than other applicable factors.

(f) In the final analysis, goodwill is based upon earning capacity. The presence of goodwill and its value, therefore, rests upon the excess of net earnings over and above a fair return on the net tangible assets. While the element of goodwill may be based primarily on earnings, such factors as the prestige and renown of the business, the ownership of a trade or brand name, and a record of successful operation over a prolonged period in a particular locality, also may furnish support for the inclusion of intangible value. In some instances it may not be possible to make a separate appraisal of the tangible and intangible assets of the business. The enterprise has a value as an entity. Whatever intangible value there is, which is supportable by the facts, may be measured by the amount by which the appraised value of the tangible assets exceeds the net book value of such assets.

(g) Sales of stock of a closely held corporation should be carefully investigated to determine whether they represent transactions at arm's length. Forced or distress sales do not ordinarily reflect fair market value nor do isolated sales in small amounts necessarily control as the measure of value. This is especially true in the valuation of a controlling interest in a corporation. Since, in the case of closely held stocks, no prevailing market prices are available, there is no basis for making an adjustment for blockage. It follows, therefore, that such stocks should be valued upon a consideration of all the evidence affecting the fair market value. The size of the block of stock itself is a relevant factor to be considered. Although it is true that a minority interest in an unlisted corporation's stock is more difficult to sell than a similar block of listed stock, it is equally true that control of a corporation, either actual or in effect, representing as it does an added element of value, may justify a higher value for a specific block of stock.

(h) Section 2031(b) of the Code states, in effect, that in valuing unlisted securities the value of stock or securities of corporations engaged in the same or a similar line of business which are listed on an exchange should be taken into consideration along with all other factors. An important consideration is that the corporations to be used for comparisons have capital stocks which are actively traded by the public. In accordance with section 2031(b) of the Code, stocks listed on an exchange are to be considered first. However, if sufficient comparable companies whose stocks are listed on an exchange cannot be found, other comparable companies which have stocks actively traded in on the over-the-counter market

also may be used. The essential factor is that whether the stocks are sold on an exchange or over-the-counter there is evidence of an active, free public market for the stock as of the valuation date. In selecting corporations for comparative purposes, care should be taken to use only comparable companies. Although the only restrictive requirement as to comparable corporations specified in the statute is that their lines of business be the same or similar, yet it is obvious that consideration must be given to other relevant factors in order that the most valid comparison possible will be obtained. For illustration, a corporation having one or more issues of preferred stock, bonds or debentures in addition to its common stock should not be considered to be directly comparable to one having only common stock outstanding. In like manner, a company with a declining business and decreasing markets is not comparable to one with a record of current progress and market expansion.

SEC. 5. WEIGHT TO BE ACCORDED VARIOUS FACTORS.

The valuation of closely held corporate stock entails the consideration of all relevant factors as stated in section 4. Depending upon the circumstances in each case, certain factors may carry more weight than others because of the nature of the company's business. To illustrate:

(a) Earnings may be the most important criterion of value in some cases whereas asset value will receive primary consideration in others. In general, the appraiser will accord primary consideration to earnings when valuing stocks of companies which sell products or services to the public; conversely, in the investment or holding type of company, the appraiser may accord the greatest weight to the assets underlying the security to be valued.

(b) The value of the stock of a closely held investment or real estate holding company, whether or not family owned, is closely related to the value of the assets underlying the stock. For companies of this type the appraiser should determine the fair market values of the assets of the company. Operating expenses of such a company and the cost of liquidating it, if any, merit consideration when appraising the relative values of the stock and the underlying assets. The market values of the underlying assets give due weight to potential earnings and dividends of the particular items of property underlying the stock, capitalized at rates deemed proper by the investing public at the date of appraisal. A current appraisal by the investing public should be superior to the retrospective opinion of an individual. For these reasons, adjusted net worth should be accorded greater weight in valuing the stock of a closely held investment or real estate holding company, whether or not family owned, than any of the other customary yardsticks of appraisal, such as earnings and dividend paying capacity.

SEC. 6. CAPITALIZATION RATES.

In the application of certain fundamental valuation factors, such as earnings and dividends, it is necessary to capitalize the average or current results at some appropriate rate. A determination

of the proper capitalization rate presents one of the most difficult problems in valuation. That there is no ready or simple solution will become apparent by a cursory check of the rates of return and dividend yields in terms of the selling prices of corporate shares listed on the major exchanges of the country. Wide variations will be found even for companies in the same industry. Moreover, the ratio will fluctuate from year to year depending upon economic conditions. Thus, no standard tables of capitalization rates applicable to closely held corporations can be formulated. Among the more important factors to be taken into consideration in deciding upon a capitalization rate in a particular case are: (1) the nature of the business; (2) the risk involved; and (3) the stability or irregularity of earnings.

SEC. 7. AVERAGE OF FACTORS.

Because valuations cannot be made on the basis of a prescribed formula, there is no means whereby the various applicable factors in a particular case can be assigned mathematical weights in deriving the fair market value. For this reason, no useful purpose is served by taking an average of several factors (for example, book value, capitalized earnings and capitalized dividends) and basing the valuation on the result. Such a process excludes active consideration of other pertinent factors, and the end result cannot be supported by a realistic application of the significant facts in the case except by mere chance.

SEC. 8. RESTRICTIVE AGREEMENTS.

Frequently, in the valuation of closely held stock for estate and gift tax purposes, it will be found that the stock is subject to an agreement restricting its sale or transfer. Where shares of stock were acquired by a decedent subject to an option reserved by the issuing corporation to repurchase at a certain price, the option price is usually accepted as the fair market value for estate tax purposes. See Rev. Rul. 54-76, C.B. 1954-1, 194. However, in such case the option price is not determinative of fair market value for gift tax purposes. Where the option, or buy and sell agreement, is the result of voluntary action by the stockholders and is binding during the life as well as at the death of the stockholders, such agreement may or may not, depending upon the circumstances of each case, fix the value for estate tax purposes. However, such agreement is a factor to be considered, with other relevant factors, in determining fair market value. Where the stockholder is free to dispose of his shares during life and the option is to become effective only upon his death, the fair market value is not limited to the option price. It is always necessary to consider the relationship of the parties, the relative number of shares held by the decedent, and other material facts, to determine whether the agreement represents a bonafide business arrangement or is a device to pass the decedent's shares to the natural objects of his bounty for less than an adequate and full consideration in money or money's worth. In this connection see Rev. Rul. 157 C.B. 1953-2, 255, and Rev. Rul. 189, C.B. 1953-2, 294.

SEC. 9. EFFECT ON OTHER DOCUMENTS.

Revenue Ruling 54-77, C.B. 1954-1, 187, is hereby superseded.

**§ 25.2512-1 Valuation of property; in general.**

1. Section 2512 provides that if a gift is made in property, its value at the date of the gift shall be considered the amount of the gift. The value of the property is the price at which such property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell, and both having reasonable knowledge of relevant facts. The value of a particular item of property is not the price that a forced sale of the property would produce. Nor is the fair market value of an item of property the sale price in a market other than that in which such item is most commonly sold to the public, taking into account the location of the item wherever appropriate. Thus, in the case of an item of property made the subject of a gift, which is generally obtained by the public in the retail market, the fair market value of such an item of property is the price at which the item or a comparable item would be sold at retail. For example, the value of an automobile (an article generally obtained by the public in the retail market) which is the subject of a gift, is the price for which an automobile of the same or approximately the same description, make, model, age, condition, etc., could be purchased by a member of the general public and not the price for which the particular automobile of the donor would be purchased by a dealer in used automobiles. Examples of items of property which are generally sold to the public at retail may be found in § 25.2512-6. The value is generally to be determined by ascertaining as a basis the fair market value at the time of the gift of each unit of the property. For example, in the case of shares of stocks or bonds, such unit of property is generally a share or a bond. Property shall not be returned at the value at which it is assessed for local tax purposes unless that value represents the fair market value thereof on the date of the gift. All relevant facts and elements of value as of the time of the gift shall be considered. Where the subject of a gift is an interest in a business, the value of items of property in the inventory of the business generally should be reflected in the value of the business. For valuation of interests in businesses, see § 25.2512-3. See § 25.2512-2 and §§ 25.2512-4 through 25.2512-6 for further information concerning the valuation of other particular kinds of property. See § 25.2702-6 for an adjustment to the total amount of an individual's taxable gifts where the individual's current taxable gifts include the transfer of certain interests in trust that were previously valued under the provisions of section 2702.