# AMERICAN SOCIETY OF APPRAISERS
## Business Valuation Statements

## SBVS-1 The Guideline Company Valuation Method©

### I. Preamble

A. This statement is required to be followed in all valuations of businesses, business ownership interests, and securities by all members of the American Society of Appraisers, be they Candidates, Accredited Members (AM), Accredited Senior Appraisers (ASA), or Fellows (FASA).

B. The purpose of this statement is to define and describe the requirements for the use of guideline companies in the valuation of businesses, business ownership interests or securities.

C. This statement incorporates the general preamble to the Business Valuation Standards of the American Society of Appraisers.

### II. Conceptual Framework

A. Market transactions in businesses, business ownership interests or securities can provide objective, empirical data for developing valuation ratios to apply in business valuation.

B. The development of valuation ratios from guideline companies should be considered for use in the valuation of businesses, business ownership interests or securities, to the extent that adequate information is available.

C. Guideline companies are companies that provide a reasonable basis for comparison to the investment characteristics of the company being valued. Ideal guideline companies are in the same industry as the company being valued; but if there is insufficient transaction evidence available in the same industry it may be necessary to select companies with an underlying similarity of relevant investment characteristics such as markets, products, growth, cyclical variability and other salient factors.

### III. Search for and Selection of Guideline Companies

A. A thorough, objective search for guideline companies is required to establish the credibility of the valuation analysis. The procedure must include criteria for screening and selecting guideline companies.

B. Empirical data from guideline companies can be found in transactions involving either minority or controlling interests in either publicly traded or closely held companies.

### IV. Financial Data of the Guideline Companies

A. It is necessary to obtain and analyze financial and operating data on the guideline companies, as available.

B. Consideration should be given to adjustments to the financial data of the subject company and the guideline companies to minimize the difference in accounting treatments when such differences are significant. Unusual or nonrecurring items should be analyzed and adjusted as appropriate.

### V. Comparative Analysis of Qualitative and Quantitative Factors

A comparative analysis of qualitative and quantitative similarities and differences between

guideline companies and the subject company must be made to assess the investment attributes of the guideline companies relative to the subject company.

## VI. Valuation Ratios Derived From Guideline Companies

A. Price information of the guideline companies must be related to the appropriate underlying financial data of each guideline company in order to compute appropriate valuation ratios.

B. The valuation ratios for the guideline companies and comparative analysis of qualitative and quantitative factors should be used together to determine appropriate valuation ratios for application to the subject company.

C. Several valuation ratios may be selected for application to the subject company and several value indications may be obtained. The appraiser should consider the relative importance accorded to each of the value indications utilized in arriving at the valuation conclusion.

D. To the extent that adjustments for dissimilarities with respect to minority and control, or marketability, have not been made earlier, appropriate adjustments for these factors must be made, if applicable.

Copyright, © 1992, 1994—American Society of Appraisers

# AMERICAN SOCIETY OF APPRAISERS
## Advisory Opinion No. 1

## Financial Consultation and Advisory Services©

It is the opinion of the Business Valuation Committee that the American Society of Appraisers Business Valuation Standards and the Uniform Standards of Professional Appraisal Practice of The Appraisal Foundation, as they apply to business valuation issues, are intended to apply to appraisals that are formally developed and presented opinions of value performed as the primary or ultimate objective of an appraisal engagement. These standards are not intended to apply to financial consultation or advisory services including but not limited to fairness opinions, solvency opinions, pricing of securities for public offerings, feasibility studies, transfer pricing studies, lifing studies of intangibles, estate planning or estate tax services, economic damage analysis and quantification, litigation consulting, royalty rate studies for intangibles, and similar engagements where there is no expression of value opinion or the primary or the ultimate objective is not to express an opinion of value.

Copyright, © 1997—American Society of Appraisers

# The Appraisal Foundation

## Uniform Standards of Professional Appraisal Practice©

All USPAP material is copyrighted by The Appraisal Foundation and is updated annually as of January 1. The 1997 edition of USPAP has been used in this brochure. USPAP in its entirety can be obtained for $25 from The Appraisal Foundation. Address: 1029 Vermont Ave., N.W., Suite 900, Washington, D.C. 20005-3517; Phone (202) 347-7722, but is provided free to ASA members.

USPAP in its entirety includes other standards as well as statements on standards and accompanying advisory opinions which are not included here. Business valuation practitioners and reviewers should be familiar with all parts of USPAP.

This publication contains the following sections:


| Title | Page |
|---|---|
| Preamble | 26 |
| Ethics Provision | 27 |
| Competency Provision | 29 |
| Departure Provision | 29 |
| Jurisdictional Exception | 30 |
| Supplemental Standards | 30 |
| Selected USPAP Definitions | 31 |
| Appraisal Standard 3 | 32 |
| Appraisal Standard 9 | 34 |
| Appraisal Standard 10 | 37 |
| Statements on Appraisal Standards | 39 |
| Advisory Opinions | 39 |


Published in the United States of America Copyright © 1997 by The Appraisal Foundation. All rights reserved.

No parts of this publication may be reproduced, stored in a retrieval system, or transmitted in any form or by any means, electronic, mechanical, photocopy, recording or otherwise, without the prior written consent of the publisher.

# UNIFORM STANDARDS OF PROFESSIONAL APPRAISAL PRACTICE*

*as promulgated by the*
*Appraisal Standards Board of*
*The Appraisal Foundation*

## PREAMBLE

**It is essential that a professional appraiser arrive at and communicate his or her analyses, opinions, and advice in a manner that will be meaningful to the client and will not be misleading in the marketplace. These Uniform Standards of Professional Appraisal Practice reflect the current standards of the appraisal profession.**

**The importance of the role of the appraiser places ethical obligations on those who serve in this capacity. These standards include explanatory comments and begin with an ETHICS PROVISION setting forth the requirements for integrity, objectivity, independent judgment, and ethical conduct. In addition, these standards include a COMPETENCY PROVISION which places an immediate responsibility on the appraiser prior to acceptance of an assignment. DEFINITIONS applicable to these Standards are also included. The Standards contain binding requirements, as well as specific guidelines to which a DEPARTURE PROVISION may apply under certain limited conditions. Those limited conditions do no include departure from the PREAMBLE, ETHICS PROVISION, COMPETENCY PROVISION and DEFINITIONS section.**

**These standards deal with the procedures to be followed in performing an appraisal, review or consulting service and the manner in which an appraisal, review or consulting service is communicated. STANDARDS 1 and 2 relate to the development and communication of a real property appraisal. STANDARD 3 establishes guidelines for reviewing an appraisal and reporting on that review. STANDARDS 4 and 5 address the development and communication of various real estate or real property consulting functions by an appraiser. STANDARD 6 sets forth criteria for the development and reporting of mass appraisals for ad valorem tax purposes or any other universe of properties. STANDARDS 7 and 8 establish guidelines for developing and communicating personal property appraisals. STANDARDS 9 and 10 establish guidelines for developing and communicating business appraisals.**

**These Standards include Statements on Appraisal Standards issued by the Appraisal Standards Board for the purpose of clarification, interpretation, explanation, or elaboration of a Standard or Standards Rule.**

**These standards are for appraisers and the users of appraisal services. To maintain the highest level of professional practice, appraisers must observe these standards. The users of appraisal services should demand work performed in conformance with these standards.**

Comment: Explanatory comments are an integral part of the Uniform Standards and should be viewed as extensions of the Provisions, Definitions, and Standards Rules. Comments provide interpretation from the Appraisal Standards Board concerning the background or application of certain Provisions, Definitions, or Standards Rules. There are no comments for Provisions, Definitions, and Standards Rules that are axiomatic or have not yet required further explanation; however, additional comments will be developed and others supplemented or revised as the need arises. Footnotes to Standards Rules referring to Advisory Opinions are for guidance only and do not incorporate the Advisory Opinions into the Standards Rules.

*PREAMBLE portions which solely relate to real property appraisal have been omitted. See the full document for portions left out.

## ETHICS PROVISION

**Because of the fiduciary responsibilities inherent in professional appraisal practice, the appraiser must observe the highest standards of professional ethics. This ETHICS PROVISION is divided into four sections: Conduct, Management, Confidentiality, and Record Keeping.**

> Comment: This provision emphasizes the personal obligations and responsibilities of the individual appraiser. However, it should also be emphasized that groups and organizations engaged in appraisal practice share the same ethical obligations.

### Conduct

**An appraiser must perform ethically and competently in accordance with these standards and not engage in conduct that is unlawful, unethical, or improper. An appraiser who could reasonably be perceived to act as a disinterested third party in rendering an unbiased appraisal, review, or consulting service must perform assignments with impartiality, objectivity, and independence and without accommodation of personal interests.**

**An appraiser is required to avoid any action that could be considered misleading or fraudulent. In particular, it is unethical for an appraiser to use or communicate a misleading or fraudulent report or to knowingly permit an employee or other person to communicate a misleading or fraudulent report.**[1]

**The development of an appraisal, review, or consulting service based on a hypothetical condition is unethical unless: 1) the use of the hypothesis is clearly disclosed; 2) the assumption of the hypothetical condition is clearly required for legal purposes, for purposes of reasonable analysis, or for purposes of comparison and would not be misleading; and 3) the report clearly describes the rationale for this assumption, the nature of the hypothetical condition, and its effect on the result of the appraisal, review, or consulting service.**

> Comment: An individual appraiser employed by a group or organization which conducts itself in a manner that does not confirm to these standards should take steps that are appropriate under the circumstances to ensure compliance with the standards.

### Management

**The acceptance of compensation that is contingent upon the reporting of a predetermined value or a direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event is unethical.**

**The payment of undisclosed fees, commissions, or things of value in connection with the procurement of appraisal, review, or consulting assignments is unethical.**

> Comment: Disclosure of fees, commissions, or things of value connected to the procurement of an assignment should appear in the certification of a written report and in any transmittal letter in which conclusions are stated. In groups or organizations engaged in appraisal practice, intra-company payments to employees for business development are not considered to be unethical. Competency, rather than financial incentives, should be the primary basis for awarding an assignment. Advertising for or soliciting appraisal assignments in a manner which is false, misleading or exaggerated is unethical.

**Advertising for or soliciting appraisal assignments in a manner which is false, misleading or exaggerated in unethical.**

[1] See Advisory Opinion AO-5.

Comment: In groups or organizations engaged in appraisal practice, decisions concerning finder or referral fees, contingent compensation, and advertising may not be the responsibility of an individual appraiser, but for a particular assignment, it is the responsibility of the individual appraiser to ascertain that there has been no breach of ethics, that the appraisal is prepared in accordance with these Standards, and that the report can be properly certified as required by Standards Rules 2-3, 3-2, 5-3, 6-8, 8-3 or 10-3.

**The restriction on contingent compensation in the first paragraph of this section does not apply to consulting assignments where the appraiser is not acting in a disinterested manner and would not reasonably be perceived as performing a service that requires impartiality. This permitted contingent compensation must be properly disclosed in the report.**

Comment: Assignments where the appraiser is not acting in a disinterested manner are further discussed in the General Comment to STANDARD 4. The preparer of the written report of such an assignment must certify that the compensation is contingent and must explain the basis for the contingency in the report (See S.R. 5-3) and in any transmittal letter in which conclusions are stated.

## Confidentiality[2]

**An appraiser must protect the confidential nature of the appraiser-client relationship.**

Comment: An appraiser must not disclose confidential factual data obtained from a client or the results of an assignment prepared for a client to anyone other than 1) the client and persons specifically authorized by the client; 2) such third parties as may be authorized by due process of law; and 3) a duly authorized professional peer review committee. As a corollary, it is unethical for a member of a duly authorized professional peer review committee to disclose confidential information or factual data presented to the committee.

## Record Keeping

**An appraiser must prepare written records of appraisal, review, and consulting assignments including oral testimony and reports and retain such records for a period of at least five (5) years after preparation or at least two (2) years after final disposition of any judicial proceeding in which testimony was given, whichever period expires last. The written recoreds of an assignment are the workfile.**

Comment: Written records of assignments include true copies of written reports, written summaries of oral testimony and reports (or a transcript of testimony), all data and statements required by these standards, and other information as may be required to support the findings and conclusions of the appraiser. A workfile may also include information stored on electronic, magnetic, or other media as well as a reference indicating the location of other information utilized in the appraisal.

Care should be exercised in the selection of form, style, and type of medium for written records, which may be handwritten and informal, to ensure that they are retrievable by the appraiser throughout the prescribed record retention period.

A workfile must be in existence prior to and contemporaneous with the issuance of a written or oral report. A written summary of an oral report must be added to the workfile within a reasonable time after the issuance of the oral report.

[2] See Statement on Appraisal Standards Number 5.

## COMPETENCY PROVISION

**Prior to accepting an assignment or entering into an agreement to perform any assignment, an appraiser must properly identify the problem to be addressed and have the knowledge and experience to complete the assignment competently; or alternatively:**

1. **disclose the lack of knowledge and/or experience to the client before accepting the assignment; and**
2. **take all steps necessary or appropriate to complete the assignment competently; and**
3. **describe the lack of knowledge and/or experience and the steps taken to complete the assignment competently in the report.**

Comment: The background and experience of appraisers varies widely and a lack of knowledge or experience can lead to inaccurate or inappropriate appraisal practice. The COMPETENCY PROVISION requires an appraiser to have both the knowledge and the experience required to perform a specific appraisal service competently. If an appraiser is offered the opportunity to perform an appraisal service but lacks the necessary knowledge or experience to complete it competently, the appraiser must disclose his or her lack of knowledge or expereince to the client before accepting the assignment and then take the necessary or appropriate steps to complete the appraisal service competently. This may be accomplished in various ways including, but not limited to, personal study by the appraiser; association with an appraiser reasonably believed to have the necessary knowledge or experience; or retention of others who possess the required knowledge or experience.

Although this provision requires an appraiser to identify the problem and disclose any deficiency in competence prior to accepting an assignment, facts or conditions uncovered during the course of an assignment could cause an appraiser to discover that he or she lacks the required knowledge or experience to complete the assignment competently. At the point of such discovery, the appraiser is obligated to notify the client and comply with items 2 and 3 of the provision.

The concept of competency also extends to appraisers who are requested or required to travel to geographic areas wherein they have no recent appraisal experience. An appraiser preparing an appraisal in an unfamiliar location must spend sufficient time to understand the nuances of the local market and the supply and demand factors relating to the specific property type and the location involved. Such understanding will not be imparted solely from a consideration of specific data such as demographics, costs, sales and rentals. The necessary understanding of local market conditions provides the bridge between a sale and a comparable sale or a rental and a comparable rental. If an appraiser is not in a position to spend the necessary amount of time in a market area to obtain this understanding, affiliation with a qualified local appraiser may be the appropriate response to ensure the development of a competent appraisal.

## DEPARTURE PROVISION[3]

**This provision permits limited departures from sections of the Uniform Standards that are classified as specific guidelines rather than binding requirements. The burden of proof is on the appraiser to decide before accepting an assignment and invoking this provision that the result will not confuse or mislead. The burden of disclosure is also on the appraiser to report any departures from specific guidelines.**

**An appraiser may enter into an agreement to perform an assignment that calls for something less than, or different from, the work that would otherwise be required by the specific guidelines, provided that prior to entering into such an agreement:**

[3] See Statement on Appraisal Standards Number 7.

1. **the appraiser has determined that the appraisal or consulting process to be performed is not so limited that the resulting assignment would tend to mislead or confuse the client or the intended users of the report;**
2. **the appraiser has advised the client that the assignment calls for something less than, or different from, the work required by the specific guidelines and that the report will clearly identify and explain the departure(s); and**
3. **the client has agreed that the performance of a limited appraisal or consulting service would be appropriate.**

Comment: For the purpose of this provision, intended users of the report might include parties such as lenders, employees of government agencies, partners of a client, and a client's attorney and accountant. In this context, the purpose and intended use of the appraisal or consulting service are critical.

If an appraiser enters into an agreement to perform an appraisal or consulting service that calls for something less than, or different from, the work that would otherwise be required by the specific appraisal guidelines, Standards Rules 2-2(a)(xi), 2-2(b)(xi), 5-2(i), 8-2(m), and 10-2(h) require that the report clearly identify and explain departure(s) from the specific guidelines.

JURISDICTIONAL EXCEPTION

**If any part of these standards is contrary to the law or public policy of any jurisdiction, only that part shall be void and of no force or effect in that jurisdiction.**

SUPPLEMENTAL STANDARDS

**These Uniform Standards provide the common basis for all appraisal practice. Supplemental standards applicable to appraisers prepared for specific purposes or property types may be issued by public agencies and certain client groups, e.g. regulatory agencies, eminent domain authorities, asset managers, and financial institutions. Appraisers and clients must ascertain whether any supplemental standards in addition to these Uniform Standards apply to the assignment being considered.**[4]

[4]See Advisory Opinion A0-7 and AO-8.

## Selected USPAP Definitions

*Readers of these pages should also be familiar with the general definitions in the full body of the Uniform Standards of Professional Appraisal Practice.*

**APPRAISAL: (noun) the act or process of estimating value; an estimate of value. (adjective) of or pertaining to appraising and related functions, e.g. apppraisal practice, appraisal services.**

**Complete Appraisal:** The act or process of estimating value or an estimate of value performed without invoking the DEPARTURE PROVISION.

**Limited Appraisal:** The act or process of estimating value or an estimate of value performed under and resulting from invoking the DEPARTURE PROVISION.

**BINDING REQUIREMENT: All or part of a standards rule of USPAP from which departure is not permitted (See DEPARTURE PROVISION).**

**BUSINESS ASSETS: Tangible and intangible resources that are employed by a business enterprise in its operations.**

**BUSINESS ENTERPRISE: A commercial, industrial or service organization pursuing an economic activity.**

**BUSINESS EQUITY: The interests, benefits, and rights inherent in the ownership of a business enterprise or a part thereof in any form (including but not necessarily limited to capital stock, partnership interests, cooperatives, sole proprietorships, options, and warrants).**

**INTANGIBLE PROPERTY (INTANGIBLE ASSETS): Non physical assets, including but not limited to franchises, trademarks, patents, copyrights, goodwill, equities, mineral rights, securities, and contracts, as distinguished from physical assets such as facilities and equipment.**

**REPORT: Any communication, written or oral, of an appraisal, review, or consulting service that is transmitted to the client upon completion of an assignment.**

**SPECIFIC GUIDELINE: All or part of a standards rule of USPAP from which departure is permitted under certain limited conditions. (See DEPARTURE PROVISION).**

# Appraisal Standards 3, 9 and 10

**STANDARD 3 - Review Appraisal and Reporting**

**In reviewing an appraisal and reporting the results of that review, an appraiser must form an opinion as to the adequacy and appropriateness of the report being reviewed and must clearly disclose the nature of the review process undertaken.[5]**

Comment: The function of reviewing an appraisal requires the preparation of a separate report or a file memorandum by the appraiser performing the review setting forth the results of the review process. Review appraisers go beyond checking for a level of completeness and consistency in the report under review by providing comment on the content and conclusions of the report. They may or may not have first-hand knowledge of the subject property or of data in the report. The COMPETENCY PROVISION applies to the appraiser performing the review as well as the appraiser who prepared the report under review.

Reviewing is a distinctly different function from that addressed in Standards Rule 2-5. In accordance with Standards Rule 2-5, any appraiser who signs the appraisal report accepts full responsibility for the appraisal and appraisal report. To avoid confusion between these two functions, review appraisers should not sign the report under review unless they intend to take the responsibility of a cosigner.

Review appraisers must take appropriate steps to indicate to third parties the precise extent of the review process. A separate report or letter is one method. Another appropriate method is a form or check-list prepared and signed by the appraiser conducting the review and attached to the report under review. It is also possible that a stamped impression on the appraisal report under review, signed or initialed by the reviewing appraiser, may be an appropriate method for separating the review function from the actual signing of the report. To be effective, however, the stamp must briefly indicate the extent of the review process and refer to a file memorandum that clearly outlines the review process conducted.

The review appraiser must exercise extreme care in clearly distinguishing between the review process and the appraisal or consulting processes. Original work by the review appraiser may be governed by STANDARD 1 or STANDARD 4 rather than this standard. A misleading or fradulent review and/or report violates the ETHICS PROVISION.

Standards Rule 3-1

**In reviewing an appraisal, an appraiser must:**

(a) **identify the report under review, the real estate and real property interest being appraised, the effective date of the opinion in the report under review, and the date of the review;**

(b) **identify the extent of the review process to be conducted;**

(c) **form an opinion as to the completeness of the report under review in light of the requirements in these standards;**

Comment: The review should be conducted in the context of market conditions as of the effective date of the opinion in the report being reviewed.

(d) **form an opinion as to the apparent adequacy and relevance of the data and the propriety of any adjustments to the data;**

[5]See Advisory Opinion AO-6.

**(e) form an opinion as to the appropriateness of the appraisal methods and techniques used and develop the reasons for any disagreement;**

**(f) form an opinion as to whether the analyses, opinions, and conclusions in the report under review are appropriate and reasonable, and develop the reasons for any disagreement.**

Comment: Departure from binding requirements (a) through (f) above is not permitted.

An opinion of a different estimate of value from that in the report under review, or a statement that the value estimate in the report under review remains reasonable as of a more current effective date, may be expressed, provided the review appraiser:

1. satisfies the requirements of STANDARD 1;
2. identifies and sets forth any additional data relied upon and the reasoning and basis for the different estimate of value; and,
3. clearly identifies and discloses all assumptions and limitations connected with the different estimate of value to avoid confusion in the marketplace.

**Standard Rule 3-2**

**In reporting the results of an appraisal review, an appraiser must:[6]**

**(a) disclose the nature, extent, and detail of the review process undertaken;**

**(b) disclose the information that must be considered in Standards Rule 3-1 (a) and (b);**

**(c) set forth the opinions, reasons, and conclusions required in Standards Rule 3-1 (c), (d), (e) and (f);**

**(d) include all known pertinent information;**

**(e) include a signed certification similar in content to the following:**

**I certify that, to the best of my knowledge and belief:**

- **the facts and data reported by the review appraiser and used in the review process are true and correct.**
- **the analyses, opinions, and conclusions in this review report are limited only by the assumptions and limiting conditions stated in this review report, and are my personal, unbiased professional analyses, opinions and conclusions.**
- **I have no (or the specified) present or prospective interest in the property that is the subject of this report and I have no (or the specified) personal interest or bias with respect to the parties involved.**
- **my compensation is not contingent on an action or event resulting from the analyses, opinions, or conclusions in, or the use of, this review report.**
- **my analyses, opinions, and conclusions were developed and this review report was prepared in conformity with the Uniform Standards of Professional Appraisal Practice.**
- **I did not (did) personally inspect the subject property of the report under review.**
- **no one provided significant professional assistance to the person signing this review report. (If there are exceptions, the name of each individual providing significant professional assistance must be stated.)**

Comment: Departure from binding requirements (a) through (e) above is not permitted.

[6] See Statement on Appraisal Standards Number 9.

## STANDARD 9 - Business Appraisal

**In developing a business or intangible asset appraisal, an appraiser must be aware of, understand, and correctly employ those recognized methods and procedures that are necessary to produce a credible appraisal.**

Comment: STANDARD 9 is directed toward the same substantive aspects set forth in Standard 1, but addresses business and intangible asset appraisal.

### Standards Rule 9-1

**In developing a business or intangible asset appraisal, an appraiser must:**

**(a) be aware of, understand, and correctly employ those recognized methods and procedures that are necessary to produce a credible appraisal;**

Comment: Departure from this binding requirement is not permitted. Changes and developments in the economy and in investment theory have a substantial impact on the business appraisal profession. Important changes in the financial arena, securities regulation, tax law and major new court decisions may result in corresponding changes in business appraisal practice.

**(b) not commit a substantial error of omission or commission that significantly affects an appraisal;**

Comment: Departure from this binding requirement is not permitted. In performing appraisal services an appraiser must be certain that the gathering of factual information is conducted in a manner that is sufficiently diligent to reasonably ensure that the data that would have material or significant effect on the resulting opinions or conclusions are considered. Further, an appraiser must use sufficient care in analyzing such data to avoid errors that would significantly affect his or her opinions and conclusions.

**(c) not render appraisal services in a careless or negligent manner, such as a series of errors that, considered individually, may not significantly affect the results of an appraisal, but which, when considered in the aggregate, would be misleading.**

Comment: Departure from this binding requirement is not permitted. Perfection is impossible to attain and competence does not require perfection. However, an appraiser must not render appraisal services in a careless or negligent manner. This rule requires an appraiser to use diligence and care. The fact that the carelessness or negligence of an appraiser has not caused an error that significantly affects his or her opinions or conclusions and thereby seriously harms a client does not excuse such carelessness or negligence.

### Standards Rule 9-2

**In developing a business or intangible asset appraisal, an appraiser must observe the following specific appraisal guidelines:**

**(a) adequately identify the business enterprise, assets, or equity under consideration, define the purpose and the intended use of the appraisal, consider the elements of the appraisal investigation, consider any special limiting conditions, and identify the effective date of the appraisal;**[7]

[7] See Statement on Appraisal Standards Number 9.



GF0794

**(b) define the value being considered.**

**(i) if the appraisal concerns a business enterprise or equity interests, consider any buy-sell agreements, investment letter stock restrictions, restrictive corporate charter or partnership agreement clauses, and any similar features or factors that may have an influence on value.**

**(ii) if the appraisal concerns assets, the appraiser must consider whether the assets are:**

**(1) appraised separately; or**

**(2) appraised as parts of a going concern.**

Comment: The value of assets held by a business enterprise may change significantly depending on whether the basis of valuation is acquisition or replacement, continued use in place, or liquidation.

**(iii) if the appraisal concerns equity interests in a business enterprise, consider the extent to which the interests do or do not contain elements of ownership control.**

Comment: Special attention should be paid to the attributes of the interest being appraised including the rights and benefits of ownership. The elements of control in a given situation may be affected by law, distribution of ownership interests, contractual relationships, and many other factors. As a consequence, the degree of control or lack of it depends on a broad variety of facts and circumstances which must be evaluated in the specific situation. Equity interests in a business enterprise are not necessarily worth the pro rata share of the business enterprise value as a whole.

Conversely, if the value of the whole is not considered, the value of the business enterprise is not necessarily a direct mathematical extension of the value of the fractional interests.

Standards Rule 9-3

**In developing a business or intangible asset appraisal relating to an equity interest with the ability to cause liquidation of the enterprise, an appraiser must investigate the possibility that the business enterprise may have a higher value in liquidation than for continued operation as a going concern absent contrary provisions of law of a competent jurisdiction. If liquidation is the indicated basis of valuation, any real estate or personal property to be liquidated must be valued under the appropriate standard.**

Comment: Departure from this binding requirement is not permitted. This rule requires the appraiser to recognize that continued operation of a business is not always the best premise of value, as liquidation may result in a higher value. It should be noted, however, that this should be considered only when the business equity being appraised is in a position to cause liquidation. If liquidation is the appropriate premise of value, then assets such as real estate and tangible personal property must be appraised under STANDARD 1 and STANDARD 7, respectively.

Standards Rule 9-4

**In developing a business or intangible asset appraisal, an appraiser must observe the following specific appraisal guidelines when applicable:**

**(a) consider all appropriate valuation methods and procedures.**

**(b) collect and analyze relevant data regarding:**

**(i) the nature and history of the business;**

**(ii) financial and economic conditions affecting the business enterprise, its industry, and the general economy;**

**(iii) past results, current operations, and future prospects of the business enterprise;**

**(iv) past sales of capital stock or other ownership interests in the business enterprise being appraised;**

**(v) sales of similar businesses or capital stock of publicly held similar businesses;**

**(vi) prices, terms, and conditions affecting past sales of similar business assets;**

Comment: This guideline directs the appraiser to study the prospective and retrospective aspects of the business enterprise and to study it in terms of the economic and industry environment within which it operates. Further, sales of securities of the business itself or similar businesses for which sufficient information is available should also be considered.

In certain circumstances, the business appraiser may also collect and analyze data regarding functional and/or economic utility or obsolescence of the business assets.

Economic obsolescence is a major consideration when assets are considered as parts of a going concern. It may also be one of the criteria in deciding that liquidation is the appropriate premise for valuation.

## Standards Rule 9-5

**In developing a business or intangible asset appraisal, an appraiser must:**

**(a) select and employ one or more approaches that apply to the specific appraisal assignments.**

Comment: This rule requires the appraiser to use all relevant approaches for which sufficient reliable data are available. However, it does not mean that the appraiser must use all approaches in order to comply with the rule if certain approaches are not applicable.

**(b) consider and reconcile the indications of value resulting from the various approaches to arrive at the value conclusion.**

Comment: Departure from this binding requirement is not permitted. The appraiser must evaluate the relative reliability of the various indications of value. The appraiser should consider quality and quantity of data leading to each of the indications of value. The value conclusion is the result of the appraiser's judgment and not necessarily the result of a mathematical process.

**STANDARD 10 - Business Appraisal, Reporting**

**In reporting the results of a business or intangible asset appraisal an appraiser must communicate each analysis, opinion, and conclusion in a manner that is not misleading.**

Standards Rule 10-1

**Each written or oral business or intangible asset appraisal report must:**

**(a) clearly and accurately set forth the appraisal in a manner that will not be misleading.**

Comment: Departure from this binding requirement is not permitted.

**(b) contain sufficient information to enable the intended user(s) to understand it. Any specific limiting conditions concerning information should be noted.**

Comment: Departure from this binding requirement is not permitted. Any specific limiting conditions should be noted in the engagement letter as well as in the report itself. A failure to observe this rule could cause the intended users of the report to make a serious error even though each analysis, opinion, and conclusion in the report is clearly and accurately stated.

**(c) clearly and accurately disclose any extraordinary assumption that directly affects the appraisal and indicate its impact on value.**

Comment: Departure from this binding requirement is not permitted. This rule requires a clear and accurate disclosure of any extraordinary assumptions or conditions that directly affect an analysis, opinion, or conclusion. Examples of such extraordinary assumptions or conditions might include items such as the execution of a pending lease agreement, atypical financing, infusion of additional working capital or making other capital additions, or compliance with regulatory authority rules. The report should indicate whether the extraordinary assumption or condition has a positive, negative or neutral impact on value.

Standard Rule 10-2

**Each written business or intangible assets appraisal report must comply with the following specific reporting guidelines:**

**(a) identify and describe the business enterprise, assets or equity being appraised.**

**(b) state the purpose and intended use of the appraisal.[8]**

**(c) define the value to be estimated.**

**(d) set forth the effective date of the appraisal and the date of the report.**

Comment: If the appraisal concerns equity, it is not enough to identify the entity in which the equity is being appraised without also identifying the nature of the equity, for example: the number of shares of common or preferred stock. The purpose may be to express an opinion of value but the intended use of the appraisal must also be stated.

The report date is when the report is submitted; the appraisal date or date of value is the effective date of the value conclusion.

**(e) describe the extent of the appraisal process employed;**

**(f) set forth all assumptions and limiting conditions that affect the analyses, opinions, and conclusions.**

[8] See Statement on Appraisal Standards Number 9.

**(g) set forth the information considered, the appraisal procedures followed, and the reasoning that supports the analyses, opinions and conclusions.**

**(h) set forth any additional information that may be appropriate to show compliance with, or clearly identify and explain permitted departures from, the requirements of Standard 9.**

**(i) set forth the rationale for the valuation methods and procedures considered and employed.**

**(j) include a certification in accordance with S.R. 10-3.**

Standards Rule 10-3

**Each written business or intangible asset appraisal report must contain a certification that is similar in content to the following:**

**I certify that, to the best of my knowledge and belief:**

- **the statements of fact contained in this report are true and correct.**
- **the reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are my personal, unbiased professional analyses, opinions, and conclusions.**
- **I have no (or the specified) present or prospective interest in the property that is the subject of this report, and I have no (or the specified) personal interest or bias with respect to the parties involved.**
- **my compensation is not contingent on an action or event resulting from the analyses, opinions, or conclusions in, or the use of, this report.**
- **my analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice.**
- **no one provided significant professional assistance to the person signing this report. (If there are exceptions, the name of each individual providing significant professional assistance must be stated).**

Comment: Departure from this binding requirement is not permitted.

Standards Rule 10-4

**To the extent that it is both possible and appropriate, each oral business or intangible asset appraisal report (including expert testimony) must address the substantive matters set forth in Standards Rule 10-2 and state conformity with Standards Rule 10-3.**

Standards Rule 10-5

**An appraiser who signs a business or intangible asset appraisal report prepared by another, even under the label "review appraiser", must accept full responsibility for the contents of this report.**

Comment: Departure from this binding requirement is not permitted. This requirement is directed to the employer or supervisor signing the report of an employee or subcontractor. The employer or supervisor signing the report is as responsible as the individual preparing the appraisal for the content and conclusions of the appraisal and the report. Using a conditional label next to the signature of the employer or supervisor, or signing a form report on the line over the words "review appraiser" does not exempt that individual from adherence to these Standards.

This requirement does not address the responsibilities of a review appraiser, the subject of Standard 3.

## STATEMENTS ON APPRAISAL STANDARDS

Statements on Appraisal Standards are authorized by the by-laws of The Appraisal Foundation and are specifically for the purpose of clarification, interpretation, explanation or elaboration of the Uniform Standards of Professional Appraisal Practice (USPAP). Statements have the full weight of a Standards Rule and can only be adopted by the Appraisal Standards Board after exposure and comment. See the full edition of USPAP for these statements.

## ADVISORY OPINIONS

Advisory Opinions issued by the Appraisal Standards Board do not establish new standards or interpret existing standards. Advisory opinions are issued to illustrate the applicability of appraisal standards in specific situations and to offer advice from the ASB for the resolution of appraisal issues and problems. See the full edition of USPAP for these opinions.

*Editors Note: Advisory Opinions which appear to be of specific interest to business valuers include, but are not limited to, those on Sales History, Appraisal Updates, Appraisal Review and Appraiser/Client Relationships.*

**All of the above are bound into the booklet containing the Uniform Standards of Professional Appraisal Practice. Ordering information is on page 1 of this document.**



GF0799

ASA

**American Society of Appraisers**
**555 Herndon Parkway, Suite 125**
**Herndon, Virginia 20170**
**(703) 478-2228**

**The Appraisal Foundation**
**1029 Vermont Avenue, N.W., Suite 900**
**Washington, D.C. 20005-3517**
**(202) 347-7722**

**Business Valuation Committee**
**American Society of Appraisers**
**2777 South Colorado Boulevard, Suite 200**
**Denver, Colorado 80202**
**(303) 758-6148**