IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 06-351 T
(Judge Emily C. Hewitt)

GISELE C. FISHER,

Plaintiff,

v.

THE UNITED STATES,

Defendant

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MEMORANDUM IN SUPPORT OF ADMISSION OF CHALLENGED EXHIBITS**

Pursuant to the Court's order of September 11, 2007, defendant, the United States of America, respectfully offers this response to plaintiff's memorandum filed September 17, 2007.

**STATEMENT**

On August 27, 2007, defendant moved *in limine* to exclude from evidence the testimony of plaintiff's proffered substitute expert witness, Dan Duderjohn, and several exhibits listed in plaintiff's exhibit list filed on August 6, 2007. Plaintiff filed a response in opposition to this motion on September 6, 2007. After concessions by plaintiff during the pretrial conference held on September 11, 2007, rendered defendant's objections to the testimony of Mr. Duderjohn and to some of plaintiff's listed exhibits moot,[1] The Court, on the same date, ordered plaintiff to file,

[1]During the pretrial conference, plaintiff withdrew Mr. Duderjohn as a witness, and (continued...)

on or before September 17, 2007, a brief "describ[ing] the contents of the [remaining] exhibits and the authorities that support the admission of those exhibits into evidence." Plaintiff filed this memorandum on September 17, 2007.

Plaintiff has added confusion to the matter by re-numbering her exhibits. The exhibit list dated September 17, 2007, is actually Exhibit List No. 3 (with a total of 50 exhibits listed). Exhibit List No. 2, was a revised exhibit list updated as of September 10, 2007 (with a total of 53 exhibits listed). The first Exhibit List dated August 6, 2007, had 57 exhibits listed.

Plaintiff's memorandum identifies the "Lewis Olds Report" as plaintiff's exhibit No. 24. Actually, it is plaintiff's exhibit No. 25 on the exhibit list filed on August 6, 2007 (Exhibit List No. 1), and updated on September 10, 2007 (Exhibit List No. 2). There is no reason for plaintiff to change exhibit numbers at this stage of the pretrial process. Withdrawn exhibits can just be identified as such, without renumbering the remaining exhibits.

## ARGUMENT

### I. THE LEWIS OLDS REPORT IS NOT RELEVANT IN THIS *DE NOVO* TAX REFUND SUIT

It is well-settled that a tax refund suit is a *de novo* proceeding, in which the plaintiff traditionally bears the burden of proof, both of production and of persuasion.[2] *See George E. Warren Corp. v. United States*, 135 Ct. Cl. 305, 314 (1956) ("[t]he tax laws contemplate a trial

---

[1](...continued) withdrew the exhibit originally numbered 24 on her Exhibit List No. 1, dated August 6, 2007, and on Exhibit List No. 2 updated on September 10, 2007. This exhibit was the 1987 valuation report of the D.R. Fisher Company prepared by Tony Leung.

[2] Section 7491 (26 U.S.C.) has modified the traditional burden of proof equation as discussed in the United States Memorandum of Contentions of Fact and Law and during the September 11, 2007, pretrial conference in this matter.

*de novo*”); *Gingerich v. United States*, 77 Fed. Cl. 231, 240 (2007) (citing *George E. Warren Corp.*, 135 Ct. Cl. at 314) (“[a] tax refund suit is a *de novo* proceeding”). Because it is a *de novo* proceeding, a tax refund suit is “is not an appellate review of the administrative decision that was made by the IRS; instead, the Court must make an independent decision as to whether the taxpayer is due a refund.” *D’Avanzo v. United States*, 54 Fed.Cl. 183, 186 (2002) (citing *Int’l Paper Co. v. United States*, 36 Fed. Cl. 313, 322 (1996)). As such, the finder of fact in a tax refund suit should give “no weight . . . to subsidiary factual findings made by the [Internal Revenue] Service in its internal administrative proceedings.” *Cook v. United States*, 46 Fed. Cl. 110, 113 (2000) (citing *Int’l Paper Co.*, 36 Fed. Cl. at 322).

Notwithstanding these well-settled principles, plaintiff persists in its efforts to list as a trial exhibit, and presumably, to offer into evidence, the Lewis Olds Report (originally plaintiff’s exhibit 25 on its August 6, 2007, exhibit list), a document prepared by Lewis Olds during the audit of plaintiff’s gift tax return, pursuant to a contract with the Internal Revenue Service (IRS).[3] Plaintiff’s explanation of the relevance of this report indicates that plaintiff intends to offer it into evidence for purposes of challenging the propriety of the actions that the IRS took on audit. *See* Pl.’s Mem. at 2 (contending that “the deficiency assessment [made against plaintiff] was based on the . . . [r]eport and thus it is evidence relevant to the correctness of that assessment.”). [4] The Internal Revenue Service’s administrative actions are not on trial here.

---

[3] As such, the defendant does not dispute that the Lewis Olds Report would qualify under Fed. R. Evid. 801(d)(2) (B) through (D) as “statements which are not hearsay,” *i.e.*, an “admission by party opponent.”

[4] There are no page numbers on plaintiff’s memorandum dated September 17, 2007, but the defendant assumes for the purposes of this response memorandum that plaintiff provided all (continued...)

Thus, plaintiff's burden of proof is to establish that she is entitled to a refund of tax, not to establish that the Service somehow erred in the administrative proceedings that led up to the assessment of that tax. *See, e.g., Danville Plywood Corp. v. United States*, 899 F.2d 3, 7-8 (Fed. Cir. 1990). Thus, the report is not relevant for the purpose that plaintiff intends to offer it for, and hence should be excluded from evidence.

Furthermore, to the extent that plaintiff may be contending that the report is admissible simply because its conclusions are, according to plaintiff, different than those made by defendant's expert in some respects, plaintiff is mistaken. *See* Pl.'s Mem. at 2 (observing that defendant's expert's "appraisal work differed significantly from [that of] Mr. Olds in several key respects, thereby casting doubt on the correctness of" defendant's expert's report). If, indeed, plaintiff is so contending, she is, in essence, seeking to offer Mr. Olds's opinions as expressed in the report to rebut the opinions of defendant's expert. Mr. Olds's report, however, is inadmissible for this purpose for two reasons. First, plaintiff neither identified Mr. Olds as a rebuttal expert witness on or before June 1, 2007, nor did plaintiff identify his report as a rebuttal report on or before that date, both as required RCFC 26(a)(2) and by the Court's order of October 4, 2006. Consequently, plaintiff cannot now offer Mr. Olds's opinions into evidence to rebut those of defendant's expert. *See* RCFC 37(c)(1) (sanction for failure to make disclosure required by RCFC 26(a) is exclusion). Furthermore, although not identical, plaintiff's attempt to introduce Mr. Olds's report for this purpose is tantamount to an attempt to offer the opinions of a party-opponent's nontestifying consulting expert against the party, which has been held by

---

[4](...continued)
the pages of her memorandum to the United States. *See R.C.F.C. 5.3(c).*

multiple courts to be inconsistent with Federal Rule of Civil Procedure 26(b)(4)(B), which is substantively similar to RCFC 26(b)(4)(B). *See, e.g., Durflinger v. Artiles*, 727 F.2d 888, 891 (10th Cir. 1984) (holding that defendant could not call expert who was previously hired by plaintiff for purposes of case at bar, but whom plaintiff ultimately did not designate as a testifying expert); *Wang Labs., Inc. v. Toshiba Corp.*, 762 F. Supp. 1246, 1248 (E.D. Va. 1991) ("[N]o one would seriously contend that a court should permit a consultant to serve as one party's expert where it is undisputed that the consultant was previously retained as an expert by the adverse party in the same litigation and had received confidential information from the adverse party pursuant to the earlier retention.").

Similarly, plaintiff cannot use Lewis Olds' critique to impeach Hanke, as the statements therein are Olds', not Hanke's. The Olds' critique is part of the administrative proceeding and is therefore not relevant to this *de novo* proceeding. It is not a proper exhibit in this case and its contents are not relevant to the outcome here either.

## II. THE LEARNED TREATISE EXCEPTION OF THE HEARSAY RULE DOES NOT PERMIT LEARNED TREATISES TO BE RECEIVED IN EVIDENCE AS EXHIBITS

Plaintiff's memorandum makes clear that plaintiff concedes that certain exhibits (Nos. 33-36 and 38-50 on its Exhibit List No. 3) are hearsay, and further that the only exception to the hearsay rule that plaintiff contends applies to statements found in these exhibits is Fed.R. Evid. 803(18), the "learned treatises" exception. *See* Pl.'s Mem. at 2-3.[5] What plaintiff's memorandum, and the accompanying declaration, do not make clear, however, is whether

---

[5] Plaintiff's memorandum mistakenly refers to "both United States' experts." The United States has only one designated expert in this *de novo* proceeding, Mr. Hanke.

plaintiff intends to offer these purported treatises themselves into evidence. To the extent that plaintiff does intend to offer these treatises themselves into evidence, plaintiff is prohibited from doing so by Rule 803(18), which plainly provides that learned treatises may not themselves be received into evidence as exhibits:

> To the extent called to the attention of an expert witness upon cross-examination or relied upon by the expert witness in direct examination, **statements contained in** published treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or art, established as a reliable authority by the testimony or admission of the witness or by other expert testimony or by judicial notice. **If admitted, the statements may be read into evidence but may not be received as exhibits.**

(Emphases added.) As the 1972 Advisory Committee's Note to Rule 803(18) states, the last sentence of the rule constitutes a "limitation upon receiving the publication itself physically into evidence." *See also United States v. Phillips*, 515 F. Supp. 758, 761-62 (E.D. Ky. 1981) (holding that photocopied chapter of a book could not be received into evidence as an exhibit, notwithstanding that expert testimony had previously established that the chapter came from a learned treatise, because Rule 803(18) "does not permit [learned treatises] to be introduced as physical exhibits").

Moreover, plaintiff's attempt to introduce these exhibits into evidence runs counter to the purpose of the last sentence of Rule 803(18). As the Advisory Committee's Note to the rule explains, the purpose behind this rule is to "avoid[] the danger of misunderstanding and misapplication" of the learned treatise by the finder of fact "by limiting the use of treatises as substantive evidence to situations in which an expert is on the stand and available to explain and assist in the application of the treatise if desired." *See also United States v. Mangan*, 575 F.2d 32, 48 n.19 (2d Cir. 1978) (Friendly, J.) (observing that "the purpose of the last sentence [of Rule

803(18)] was to prevent a jury from rifling through a learned treatise and drawing improper inferences from technical language it might not be able properly to understand without expert guidance"); *Maggipinto v. Reichman*, 481 F. Supp. 547, 550-51 (E.D. Pa. 1979). Plaintiff, by attempting to introduce these exhibits into evidence rather than introducing the statements through expert testimony, is attempting to deprive the finder of fact of the assistance of expert testimony in understanding the statements contained in these exhibits, assistance which Rule 803(18) was designed to ensure that the finder of fact would have in evaluating statements in learned treatises.[6] Consequently, plaintiff's exhibits 33-36 and 38-50 (Exhibit List No. 3) should be excluded from evidence, as they are plainly excluded from the scope of the learned treatises exception by the last sentence of Rule 803(18).

To the extent that plaintiff may seek at trial to offer particular statements from exhibits 33-36 and 38-50 into evidence through the testimony of an expert, after laying the appropriate foundation, and to have such statements read into the record, the defendant suggests that plaintiff should identify those statements in advance. No such "jump cites" are now offered with respect to Exhibits Nos. 33 through 36, and 39 (Exhibit List No. 3).

## III. FEDERAL RESERVE STATISTICAL RELEASE

The plaintiff has not satisfied the United States with respect to her attempt to seek admission into evidence of the Federal Reserve Statistical Release identified as plaintiff's exhibit No. 39 on Exhibit List No. 1, No. 38 on Exhibit List No. 2, and No. 37 on Exhibit List No. 3. Identifying the source of the document (Mr. Hanke) does not qualify it as within the exception to

[6]In *Maggipinto,* the court offered a helpful discussion of the procedures involved in the introduction and use of learned treatises at trial, and the reasons for these rules. *See Maggipinto,* 481 F. Supp. at 550-52.

the hearsay rule set forth in Fed. R. Evid. 803(17), nor does its source establish sufficient foundation for its admission. The defendant reserves this objection for trial.

**CONCLUSION**

For all of the above reasons, the United States requests that this Court grant its motion *in limine* to exclude plaintiff's exhibits other than the Federal Reserve Statistical Release discussed in part III above, for which the defendant reserves it objection for trial.

Respectfully submitted,

September 24, 2007

s/ Robert J. Higgins
ROBERT J. HIGGINS
Attorney of Record
U.S. Department of Justice, Tax Division
Court of Federal Claims Section
Post Office Box 26, Ben Franklin Station
Washington, D.C. 20044
TELEPHONE (202) 616-3423
FACSIMILE (202) 514-9440

RICHARD T. MORRISON
Acting Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section
G. ROBSON STEWART
Reviewer, Court of Federal Claims Section
JOSEPH B. SYVERSON
Trial Attorney

s/ G. Robson Stewart
Of Counsel

September 24, 2007